UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

ANNE MCKENNA FARALDO,

                Plaintiff,

    -against-

**OPINION & ORDER**
08-CV-0261 (SJF)(ETB)

CHRISTINE MCKENNA KESSLER,
LAURA MCKENNA, JOAN MCKENNA,
LISA K. FRIEDMAN, Esq., individually and
as court-appointed evaluator,

                Defendants.
--------------------------------------------------------X

FEUERSTEIN, J.

On January 17, 2008, *pro se* plaintiff Anne McKenna Faraldo (plaintiff) filed a complaint pursuant to 42 U.S.C. §§ 1983 and 1985(3), alleging violations of her constitutional rights, and 18 U.S.C. §§ 1001, 1621 and 1623, together with an application pursuant to 28 U.S.C. § 1915(a) to proceed *in forma pauperis*. For the reasons set forth below, plaintiff's application to proceed *in forma pauperis* is granted and the complaint is dismissed *sua sponte* with prejudice.

I.     BACKGROUND

    A.     Factual Background[1]

Plaintiff and defendants Christine McKenna Kessler (Christine), Laura McKenna (Laura) and Joan McKenna (Joan) (collectively, the McKenna sisters) are the daughters of Anne N.

---

[1] The following facts are taken from the complaint and do not constitute findings of fact by the Court.

1

McKenna (Anne), an eighty-two (82) year old woman. (Complaint [Compl.], ¶5). Joan resides in California. (Compl., ¶ 5). Plaintiff and the other two McKenna sisters all reside in New York. (Compl., ¶¶ 5-6) Since 1980, plaintiff and her son have resided in the upstairs of the home owned by Anne located at 4A Meadowbrook Drive, Huntington Station, New York. (Compl., ¶ 6). According to plaintiff, her name was on the deed of the home until 1990, when Christine convinced her to have it removed. (Compl., ¶¶ 6, 8). Plaintiff alleges that she continued to pay monthly expenses and to maintain the property even after her name was removed from the deed. (Compl., ¶ 8). In addition, plaintiff alleges that from 1980 until 2005, she was the only daughter who took care of Anne and the property. (Compl., ¶¶ 6-8, 10).

According to plaintiff, Christine and Laura started to assist in their mother's care in 2005 and eventually isolated plaintiff from her. (Compl., ¶¶ 13-14). Plaintiff alleges that on December 24, 2006, Christine had Anne admitted to a nursing facility under the pretense that she needed physical therapy to strengthen her legs. (Compl., ¶ 18). According to plaintiff, Anne's physical and mental condition deteriorated during her stay at that facility and the subsequent institutions to which she was admitted. (Compl., ¶¶ 18-19). Plaintiff alleges that on January 24, 2007, Anne indicated to her that she was being held in the Norwegian Christian Home (NCH), against her will and requested that plaintiff assist her to get out of there. (Compl., ¶ 20). On that same date, plaintiff commenced a habeas corpus petition in the Supreme Court of the State of New York, Kings County (Knipel, J.) seeking Anne's release from the NCH. (Compl., ¶ 21). Following a hearing on February 1, 2007, at which Anne testified, at times unintelligently, and was represented by counsel, Judge Knipel dismissed plaintiff's habeas corpus proceeding. (Compl., ¶¶ 22-29).

According to plaintiff, on or about February 2 or 3[2], 2007, Laura and Christine commenced a proceeding in the Supreme Court of the State of New York, Kings County (Tomei, J.) (the state court) for the appointment of a guardian for Anne, pursuant to Article 81 of the New York State Mental Hygiene Law (the guardianship proceeding). (Compl., ¶ 32, 47). David Rostan (Rostan) is an attorney who was appointed as a temporary guardian for Anne in March 2007. (Compl., ¶ 38).

Plaintiff alleges that on May 24, 2007, Judge Tomei advised that he intended to dismiss the guardianship proceeding and plaintiff's "cross-petition" because "all [of Anne's] needs are being taken care of at the present time."[3] (Compl., ¶ 58). However, according to plaintiff, Christine's and Laura's attorney advised Judge Tomei that a guardian was necessary for a matter pending in the Surrogate's Court of Suffolk County relating to the administration of the estate of plaintiff's deceased uncle, who died intestate in 1987, and to determine who makes decisions regarding Anne's place of abode. (Compl., ¶¶ 59-61).

Plaintiff alleges that at a January 7, 2008 hearing in the state court, she was advised that her mother had consented to the appointment of a guardian. (Compl., ¶ 79). According to plaintiff, Judge Tomei indicated an intent to sign an "Order of Commission with Notice of Settlement" appointing a guardian on January 18, 2008. (Id.).

Defendant Lisa K. Friedman, Esq. (Friedman) is an attorney who was appointed by the state court as an evaluator in the guardianship proceeding pursuant to N.Y. Mental Hygiene Law

---

[2] There is a discrepancy in the papers. (Compare Compl., ¶ 32 with Compl., ¶ 47).

[3] Plaintiff alleges that Judge Tomei rendered an oral decision on May 15, 2007 denying plaintiff's motion to dismiss the guardianship, but has failed to reduce that decision to a written order from which she can appeal. (Compl., ¶ 57).

§ 81.09. (Compl., ¶¶ 5, 33). Plaintiff alleges that Friedman's reports were filled with false statements, were not candid and were not attested to. (Compl., ¶¶ 35-37, 39, 43-44, 46; pp. 26-27). According to plaintiff, Friedman's conduct is the proximate cause of, *inter alia*, the state court's appointment of a guardian on behalf of her mother. (Compl., ¶ 35). In addition, plaintiff alleges that Friedman committed elder abuse and exploited her, her mother and her siblings by charging "the highest fee ever submitted into the Kings County for a court evaluator in the last three years," and that she invaded her and her mother's right to privacy by "delving into [their] financial lives," and adding Rostan's name to several of Anne's accounts. (Compl., ¶¶ 37, 40-42; see also p. 24, Cause of Action for Unlawful Taking of Property). Plaintiff further alleges that Friedman defamed her in the guardianship proceeding. (Compl., p. 24).

Plaintiff alleges that Laura and Christine made defamatory statements about her, *inter alia*, in the guardianship and eviction proceedings and commenced the proceedings "for the wrong reasons." (Compl., ¶¶ 48-49, p. 24). Plaintiff alleges that the other McKenna sisters, individually and in concert with each other, obtained money and property, including Anne's home, for themselves to which they were not entitled; "suborned perjury" and obstructed justice by, *inter alia*, filing reports and/or making statements to police officers and various courts containing false statements; and invaded her privacy. (Compl., pp. 24-26). Plaintiff further alleges that Christine committed fraud in 1990 by causing plaintiff's name to be removed from the deed of Anne's home; that in September 2005, Christine committed an attempted assault by pinning her against a wall and attempting to grab a video camera out of her hand; that Laura committed an attempted assault at an unspecified time by threatening to hit her with a stick; and that Laura violated her rights to free speech by causing a video that she had posted on Youtube to

4

be removed on the basis of copyright infringement. (Compl., p. 25-27).

Plaintiff also alleges that at an unspecified time, Laura and Christine caused her to be served with a "Notice to Quit Occupancy of Premises," threatening her with eviction from her mother's home. (Compl., ¶¶ 72-73). According to plaintiff, on December 4, 2007, the Appellate Term (Tannanbaum, J.), stayed the eviction proceeding pending further notice from that court. (Compl., ¶ 75).

B.  Procedural Background

On January 17, 2008, plaintiff filed the instant action pursuant to, *inter alia*, 42 U.S.C. §§ 1983 and 1985(3) against the McKenna sisters and Friedman, alleging violations of her First, Fourth, Fifth and Fourteenth Amendment rights, together with an Order to Show Cause seeking a stay of the guardianship and eviction proceedings and an application to proceed *in forma pauperis*.[4]

II.  DISCUSSION

A.  *In Forma Pauperis* Application

Upon review of plaintiff's declaration in support of her application to proceed *in forma pauperis*, I conclude that plaintiff's financial status qualifies her to commence this action without prepayment of the filing fees. See 28 U.S.C. § 1915(a)(1). Therefore, plaintiff's request to proceed *in forma pauperis* is granted.

---

[4] I declined to sign the Order to Show Cause on the basis, *inter alia*, that it did not appear that this Court has jurisdiction over this matter.

B.  Standard of Review

A *pro se* plaintiff's submissions are held "'to less stringent standards than formal pleadings drafted by lawyers . . . .'" Hughes v. Rowe, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 [1972]). Indeed, a court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Nonetheless, a *pro se* plaintiff is not exempt from compliance with relevant rules of procedural and substantive law. Traguth v. Zuck, 710 F.2d 90, 92 (2d Cir. 1983). Under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action is "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." An action shall be dismissed under § 1915 when "the claim is based on an indisputably meritless legal theory," that is, it "lacks an arguable basis in law." Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998) (quotations and citations omitted).

C.  Section 1983 Claims[5]

1.  Color of Law

To state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must establish a deprivation of

---

[5] Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * * subjects * * * any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the constitution and laws shall be liable to the party injured." 42 U.S.C. § 1983.

6

constitutional rights "under color of state law." See, Briscoe v. LaHue, 460 U.S. 325, 329-330, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993). Section 1983 liability may only be imposed upon wrongdoers "who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988)(citation omitted). Clearly, the McKenna sisters are not state officials. However, as a court evaluator appointed by the state court pursuant to N.Y. Mental Hygiene Law § 81.09, Friedman was at least arguably acting under color of state law when she prepared her reports and conducted her investigation at issue in this case.

Moreover, liability under §1983 may be imposed upon private individuals who are not state actors (1) if there exists a "sufficiently close nexus between the State and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the State itself" (the "close nexus/joint action" test); (2) when the State "has exercised coercive power or had provided such significant encouragement, either overt or covert," that the action of the private entity must be deemed that of the State (the "state compulsion" test); or (3) where the private entity "has exercised powers that are traditionally the exclusive prerogative of the State" (the "public function" test). Blum v. Yaretsky, 457 U.S. 991, 1004-1005, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)(internal quotations and citations omitted). The only factor which may be applicable to the instant case is the "close nexus/joint action" test. However, the allegations in the complaint fail to allege a "sufficiently close nexus" between Friedman and the challenged actions of the McKenna sisters such that the actions of the McKenna sisters can be deemed to be the actions of the state court or the State itself. Accordingly, plaintiff's Section 1983 claims

7

against the McKenna sisters are dismissed in their entirety.

    2.    Immunity

"A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.'" Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999) (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)). The defense of official immunity has been extended to federal civil rights claims. See, e.g. Malley v. Briggs, 475 U.S. 335, 340, 106 S.Ct. 1092, 1095, 89 L.Ed.2d 271 (1986). In determining whether an official is entitled to absolute immunity from suit, courts apply a "functional approach," which looks to the nature of the function performed by that official, not to the identity of the actor who performed it, and evaluates the effect that exposure to particular forms of liability would likely have on the appropriate exercise of that official's function. See Forrester v. White, 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988). Absolute immunity has been extended to judges acting in their judicial capacity, unless they act without any colorable claim of jurisdiction, see Stump v. Sparkman, 435 U.S. 349, 356-357, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); witnesses sued for civil damages based upon their testimony, see Briscoe, 460 U.S. at 341, 345-346, 103 S.Ct. 1108; prosecutors whose challenged actions are "intimately associated with the judicial process," Imbler v. Pachtman, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); social workers and child welfare workers whose challenged actions involve the initiation and prosecution of child custody or dependency proceedings, see Ernst v. Child and Youth Services of Chester County, 108 F.3d 486 (3d Cir. 1997); guardians ad litem in child custody proceedings, see Gardner by Gardner v. Parson, 874 F.2d 131, 146 (3d Cir. 1989); court-appointed doctors and psychiatrists,

see McArdle v. Tronetti, 961 F.2d 1083 (3d Cir. 1992); Moses v. Parwatikar, 813 F.2d 891 (8th Cir. 1987); and probation and parole officers whose challenged actions were taken in their adjudicatory capacities, see Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989).

Friedman is entitled to absolute immunity because, as court evaluator appointed pursuant to N.Y. Mental Hygiene Law § 81.09, she "acted as [an] 'arm[] of the court,' similar to a guardian ad litem or a court-appointed doctor or psychologist, a non-judicial person who fulfills a quasi-judicial role at the court's request." Hughes v. Long, 242 F.3d 121, 126 (3d Cir. 2001).

In Hughes, the Third Circuit held, *inter alia*, that a court-appointed evaluator in a child custody proceeding enjoyed judicial immunity from federal civil rights liability. 242 F.3d at 126. The Court explained that in her role as evaluator, that defendant interviewed all relevant parties, administered tests and sent the parties for psychological testing, and made a recommendation regarding a custody arrangement. Id. Friedman performed similar functions, including, *inter alia*, interviewing and consulting with Anne and the parties to this action, determining whether Anne required legal counsel, and investigating and making reports and recommendations to the state court regarding Anne's mental capacity. Moreover, like the custody evaluator in Hughes, Friedman did not initiate the guardianship proceeding and, in fact, she was appointed by the state court only after that proceeding had begun to gather information, conduct an evaluation of Anne and the relevant parties and make a recommendation to aid the guardianship determination. Furthermore, she was not an "advocate of the State," but merely offered her opinions, after fact-gathering, in order to aid and inform the state court in the guardianship proceeding. Thus, since Friedman performed functions integral to the judicial process, insofar as her extensive fact-finding and recommendations aided and informed the state court in its discretionary duties, she is

9

entitled to judicial immunity from plaintiff's civil rights claims. See, e.g. Williams v. Consovoy, 453 F.3d 173, 178 (3d Cir. 2006) (finding that individuals who perform investigative or evaluative functions at a governmental adjudicative entity's request to assist that entity in its decisionmaking process are absolutely immune to Section 1983 liability); Ludwig v. Berks County, Pennsylvania, No. Civ. 07-2127, 2007 WL 2463306, at * 5 (E.D.Pa. Aug. 28, 2007) (granting court-appointed evaluators absolute judicial immunity as to the Section 1983 and 1985 claims). Accordingly, plaintiff's civil rights claims are dismissed in their entirety as against Friedman.

D. Section 1985 Claims[6]

In order to state a claim under section 1985, a plaintiff must allege "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." See Palmieri v. Lynch, 392 F.3d 73, 86 (2d Cir. 2004) (citing Thomas v. Roach, 165 F.3d 137, 146 (2d Cir.1999)); see also Brown v. City of Oneonta, New York, 221 F.3d 329, 341 (2d Cir. 2000). Since plaintiff fails to allege that a class-based animus existed, the complaint fails to state a claim under section 1985. See, Palmieri, 392 F.3d at 86-87. Accordingly, plaintiff's section 1985 claims are dismissed in their entirety.

E. Remaining Federal Claims

---

[6] The elements of a claim under § 1985(3) are: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, ...; (3) an act in furtherance of the conspiracy; (4) whereby a person is ... deprived of any right of a citizen of the United States." Brown v. City of Oneonta, New York, 221 F.3d 329, 341 (2d Cir. 2000).

10

Plaintiff also attempts to invoke the jurisdiction of this Court by asserting claims for violations of 18 U.S.C. §1001, the federal false statement statute; 18 U.S.C. §1621, which makes it a federal crime to falsely subscribe to any verification; and 18 U.S.C. §1623, which addresses false declarations before a jury or grand jury. However, none of those federal criminal statutes provide a private right of action. See, e.g. Bender v. General Services Admin., No. 05 Civ. 6459, 2006 WL 988241, at * 1 (S.D.N.Y. Apr. 14, 2006) (holding that 18 U.S.C. § 1001 does not allow for a private civil action); Piorkowski v. Parziale, No. 3:02CV00963, 2003 WL 21037353, at * 8 (D.Conn. May 7, 2003) (holding that 18 U.S.C. §§ 1001, 1621 and 1623 do not provide a civil cause of action); see also Clements v. Miller, No. 104CV02455, 2005 WL 2085497, at * 4 (D.Colo. Aug. 29, 2005), aff'd, 189 Fed.Appx. 688 (10th Cir. 2006) (holding that there is no private right of action under 18 U.S.C. §§1001 and 1621); Traveler v. CSX Transportation, Inc., No. 1:06CV56, 2007 WL 1830807, at * 2 (N.D.Ind. June 22, 2007) (holding that 18 U.S.C. §§ 1621 and 1623 are criminal statutes which do not provide a civil right of action for damages); Gueson v. Feldman, Nos. C.A. 98-6691, C.A. 98-6693, C.A. 98-6725, 1999 WL 391478 (E.D.Pa. May 20, 1999) (holding that 18 U.S.C. §§ 1001 and 1621 do not provide a private right of action); Isbell v. Stewart & Stevenson, Ltd., 9 F.Supp.2d 731, 734 (S.D.Tex. 1998) (finding that there is no basis under 18 U.S.C. §§ 1621 and 1623 for any private right of action).

Moreover, the Declaratory Judgment Act, 28 U.S.C. § 2201, upon which plaintiff seeks to base jurisdiction, that statute merely enlarged the range of remedies available in federal court and does not create an independent ground for subject matter jurisdiction. See Leinwander v. Newman, Aronson & Neumann, 625 F.Supp. 1269, (S.D.N.Y. 1985) (citing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed.2d 1194 (1950)).

11

In addition, 28 U.S.C. § 1332, (see Compl., ¶ 2), requires complete diversity between all plaintiffs and all defendants. See Lincoln Property Co. v. Roche, 546 U.S. 81, 89, 126 S.Ct. 606, 163 L.Ed.2d 415 (2005); Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 553, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005). "[T]he presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." Exxon Mobil, 545 U.S. at 546, 125 S.Ct. 2611. Since two of the McKenna sisters, Christine and Laura, and Friedman reside in the same state as plaintiff, there is not complete diversity of citizenship and, thus, this Court does not have subject matter jurisdiction under Section 1332.

F. Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure states that a party shall be given leave to replead when justice so requires. Fed. R. Civ. P. 15(a). A district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991); see also Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991). However, since even a liberal reading of the complaint does not give any indication that a valid federal claim can be stated against the McKenna sisters or Friedman, plaintiff is not granted leave to amend her complaint. See, Fitzgerald v. First East Seventh Street Tenants Corp., No. 99 Civ. 6051, 1999 WL 675996, at * 1 (S.D.N.Y. Aug. 31, 1999), aff'd, 221 F.3d 362 (2d Cir. 2000)(*sua sponte* dismissing complaint and denying leave to amend the complaint on the grounds that any such amendment would be futile); Cummings v. Giuliani, No. 00 Civ. 6634, 2000 WL 1597868,

at * 4 (S.D.N.Y. Oct. 24, 2000)(accord).

III.  CONCLUSION

Based upon the foregoing, it is hereby,

ORDERED that plaintiff's application to proceed *in forma pauperis* is granted; and it is further

ORDERED that the complaint is dismissed *sua sponte* with prejudice; and it is further

ORDERED that the clerk of the Court shall send a copy of this order to plaintiff by regular first class mail and by certified mail, return receipt requested, and shall close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Sandra J. Feuerstein
United States District Judge

Dated:  January 23, 2008
        Central Islip, New York


Copies to:

Anne McKenna Faraldo, *pro se*
4A Meadowbrook Drive
Huntington Station, New York 11745

13